## Jaski v. Leider et al.

*Frank Carano,* for plaintiff.
*Samuel S. Halpren,* for defendants.

CRUMLISH, J., January 13, 1939.—This matter comes before the court on preliminary objections to plaintiff's bill.

Plaintiff, having obtained a judgment at law against defendant, Harry W. Leider, seeks execution against certain shares of stock which he owns in defendant corporation, Harry W. Leider Co., Inc. In order to facilitate a valid execution and sale of the shares of stock in accord-

ance with the requirements of the Uniform Stock Transfer Act, plaintiff prays:

(*a*) That defendants be enjoined from transferring the shares;

(*b*) That they be ordered to deliver said shares to the sheriff for the purpose of selling same to satisfy plaintiff's judgment;

(*c*) That the sheriff be ordered to sell sufficient thereof to satisfy plaintiff's judgment; and

(*d*) That he be authorized, if necessary, to endorse them in his official capacity for the purpose of completing their transfer on the books of defendant company.

The preliminary objections may be said to assert that plaintiff has set forth no right to equitable relief in the absence of an averment that an attempt has been made to levy upon the stock as provided in the Act of March 29, 1819, 7 Sm. L. 217, sec. 2, 12 PS §2114, or to make it liable to attachment execution as provided for in the Act of June 16, 1836, P. L. 755, secs. 32, 37, 12 PS §§2261, 2267.

The question involved is, therefore, whether there must be an attempted levy, or an attachment, before a judgment creditor can resort to a court of equity to enjoin the transfer of shares of stock.

At common law, corporate shares of stock were not subject to levy and sale under execution, for the reason the property they represented was considered of such shadowy nature there was nothing capable of being physically seized: Moys v. Union Trust Co., 276 Pa. 58, 60 (1923); Mills v. Jacobs et al., 131 Pa. Superior Ct. 469, 472 (1938). The Act of 1819, supra, changed the common law by providing that shares of stock should be subject to levy upon a fieri facias. The Act of 1836, supra, likewise rendered the shares subject to attachment execution. Thereafter, both types of execution were available: Weaver, for use, v. The Huntingdon & Broad Top Mountain R. R., etc., 50 Pa. 314 (1865); Early & Lane's Appeal, 89 Pa. 411, 413 (1879). In 1911, the Uni-

form Stock Transfer Act of May 5, 1911, P. L. 126, was adopted. This act to some extent limited the provisions of the former acts by providing:

"Section 13. No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined."

The act extends the assistance of equity to judgment creditors in fulfilling the requirements of section 13 as follows:

"Section 14. A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof, as is allowed at law or in equity in regard to property which cannot readily be attached or levied upon by ordinary legal process."

Defendant's position is that the ancillary proceedings thus provided for may not be instituted until after some sort of execution has been issued and the sheriff has made an unsuccessful attempt to seize the share certificate. The language of the quoted section of the Uniform Stock Transfer Act fails to support this position. Section 13 is in the alternative and provides that the levy or attachment shall not be valid unless there is an actual seizure or "its transfer by the holder be enjoined." As to when the proceedings to enjoin the transfer must be or may be instituted, the act is silent. The logical time to do so would be before the issuance of execution inasmuch as the injunction is an alternative prerequisite to the validity of any attachment or levy. The act so clearly implies this that the question has twice arisen as to whether the act does not absolutely require that the ancillary proceedings be instituted, if at all, prior to the issuance of execution. In Edward F. Henson & Co. v. Stetser et al., 26 Dist. R. 155 (1917), Judge Ferguson held that the act did not re-

quire that transfer be enjoined before attachment, but that the attachment could not be effective until an injunction had been obtained in ancillary proceedings in equity. In Bateh v. Shihadeh et al., 21 D. & C. 70 (1934), President Judge Knight decided that the injunction need not be asked for until answer is made to the interrogatories. There is no intimation in either of these cases that an attempt at actual seizure must be made before the ancillary proceedings may be entertained. The natural implication is just the opposite. The courts were mainly concerned with the question as to whether it was imperative that the ancillary proceedings be instituted first. In Pottash et al. v. Albany Oil Co., 274 Pa. 384 (1922), similar provisions of the Uniform Bills of Lading Act of June 9, 1911, P. L. 838, were interpreted, to wit:

" 'Sect. 24. If goods are delivered to a carrier by the owner . . . and a negotiable bill is issued for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise, or be levied upon under an execution, unless the bill be first surrendered to the carrier or its negotiation enjoined. The carrier shall in no such case be compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court.

" 'Sect. 25. A creditor whose debtor is the owner of a negotiable bill shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such bill or in satisfying the claim by means thereof, as is allowed at law or in equity in regard to property which cannot readily be attached or levied upon by ordinary legal process.' "

It was there held that the service of an attachment upon a holder of a negotiable bill of lading was not sufficient compliance with the Bills of Lading Act unless an injunction preventing the further negotiation of the bill was obtained. At what stage of the proceedings the injunction is required was not decided. The wording of the Uniform Bills of Lading Act is slightly different from

that of the Uniform Stock Transfer Act, but they were passed during the same session of the legislature and obviously for the purpose of providing creditors with the fullest possible means of reaching the negotiable documents which the debtor had before transfer to a bona fide purchaser, since the creditor is deprived of other means of realizing on the property represented by the documents. In a recent case where the facts were substantially identical with the facts here alleged, Judge Alessandroni granted the injunction, although it appeared that no attempt had been made to levy on the share certificates: Tong v. Chin et al., 34 D. & C. 4.

From an examination of the sections of the Uniform Stock Transfer Act under consideration and the authorities in point, we are of the opinion that the equity proceedings may be instituted prior or subsequent to the issuance of the execution proceedings. To hold that the creditor is required to invoke the aid of the sheriff before seeking the aid of a court of equity would amount to requiring the creditor to do a vain and foolish thing. It would be a needless and expensive formality to require the judgment creditor to send the sheriff out searching for the certificates before being allowed to seek an injunction, in view of the obvious difficulties to be encountered in locating such instruments. Moreover, in the interim, the certificates might be transferred to a bona fide purchaser for value, and thus the very purpose of the Uniform Stock Transfer Act would be defeated.

Defendant makes the further contention that the corporation is not a proper party to the suit, since the Uniform Stock Transfer Act provides only for the injunction of "its transfer by the holder". The act refers only to transfer by the holder and requires that the transfer by the holder be enjoined in order for the attachment or levy to be valid; but it certainly does not forbid the simultaneous enjoining of the corporation in order more effectively to prevent the transfer. Under any reasonable construction of sections 13 and 14 of the Uniform Stock

Transfer Act there is no valid reason why the court of equity may not extend its protection to the judgment creditor to include under its injunction the corporation issuing the share or shares of stock.

*Order*

And now, January 13, 1939, the preliminary objections to the plaintiff's bill are dismissed and defendant is required to answer over under penalty of having the bill taken pro confesso.